## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHAEL AND BETH** | ) | |
| **WEINSTEIN** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08- 00216 (RJL)** |
| | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendant, the

United States of America, through its undersigned attorneys, respectfully moves this

Court to dismiss plaintiffs' case under the Federal Tort Claims Act ("FTCA") because the

Court lacks subject matter jurisdiction as plaintiffs' claims for negligent maintenance and

failure to post warning signs on the Rock Creek Park Trail fall within the protection of

the FTCA's discretionary function exemption. See 28 U.S.C. § 2675(a); 2680(a).   In the

alternative, defendant moves pursuant to FED. R. CIV. P. 56(c) for summary judgment as

there is no genuine dispute as to any material fact and defendant is entitled to judgment as

a matter of law.  In support of this motion, the Court is respectfully referred to the

accompanying Memorandum of Points and Authorities in support of this motion,

Statement of Material Facts To Which There Is No Genuine Issue, Declaration of

Adrienne Coleman, Superintendent, Rock Creek Park, National Park Service, United

States Department of the Interior, and attached Exhibits.  A proposed order is also

attached.

.

Respectfully submitted,


_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., Room E - 4106
Washington, D.C. 20530
(202) 514-7224




Of Counsel:
Charles B. Wallace, Esq.
U.S. Department of the Interior
Office of the Solicitor

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL AND BETH** | ) | |
| **WEINSTEIN** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08- 00216 (RJL)** |
| | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT**

Plaintiffs, Michael and Beth Weinstein, have brought this action against the
United States for alleged tort liability pursuant to the Federal Tort Claims Act ("FTCA"),
28 U.S.C. § 2671 et seq., as a result of Mr. Weinstein's bicycle accident in Rock Creek
Park in 2005. Specifically, plaintiffs allege that the United States negligently failed to
maintain the Rock Creek Park multi-use trail, and negligently failed to place signs
warning of the surface irregularities, cracks, and hole that allegedly caused Mr.
Weinstein's accident. Defendant moves to dismiss plaintiffs' Complaint, pursuant to
FED. R. CIV. P. 12(b)(1) because the decisions made by Rock Creek Park officials with
regard to the maintenance of the Rock Creek Park Trail and the placement of warning
signs are, in this instance, discretionary functions and therefore immune from suit under
the FTCA, as a matter of jurisdiction. Alternatively, defendant respectfully refers the
Court to the attached Statement of Material Facts To Which There Is No Genuine Issue,
Declaration of Adrienne Coleman, Superintendent, Rock Creek Park, National Park
Service, United States Department of Interior, and exhibits, and requests that summary
judgment pursuant to FED. R. CIV. P. 56(c) be entered in favor of the defendant because

there is no genuine dispute as to the material facts of this matter and the defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

On April 16, 2005, plaintiff Michael Weinstein was riding his bicycle within Rock Creek Park along a portion of the Rock Creek Park Trail used exclusively for recreation, in the general vicinity of Beach Drive and Klingle Road.  See Plaintiffs' Complaint at p.3, ¶ 7.   According to plaintiffs, Mr. Weinstein's bicycle "hit pavement and surface irregularities, such as a pothole and cracks on the path," which caused him to lose control and fall forward over the bicycle's handlebars.  Id.  Plaintiffs allege that, as a result of the accident, Mr. Weinstein sustained injuries to his head, neck and back that have caused him to suffer permanent paralysis.  Id. at ¶ 8.  Rock Creek Park is a national park owned by the United States, and managed by the National Park Service ("NPS"), a bureau of the U.S. Department of the Interior ("DOI").

On March 28, 2007, plaintiffs submitted to DOI a Standard Form 95 claim for Mr. Weinstein's alleged personal injuries and permanent impairment, and for loss of consortium on behalf of Beth Weinstein.  See SF-95, attached hereto as Exhibit A.  DOI denied plaintiffs' claim on September 28, 2007, finding no credible evidence to establish any negligent or wrongful act or omission on the part of the Government in this matter. See DOI's Communication of Denial, attached hereto as Exhibit B.  On February 7, 2008, plaintiffs commenced the instant action, alleging that the defendant negligently failed to maintain the Rock Creek Park Trail, and failed to maintain "appropriate and adequate warning signs" along the trail.  Plaintiffs' Complaint at p. 4, 5.

Rock Creek Park proper is comprised of 1,754 acres in the District of Columbia. See Declaration of Adrienne Coleman, Rock Creek Park Superintendent, attached hereto

as Exhibit C at ¶ 2.  The park includes approximately 25 miles of multi-use recreational trails, which are not intended for the sole use of cyclists, but for the use of all park visitors.  Id. at ¶¶ 4 – 8.  Along with cycling, the trail is commonly used by hikers, joggers, and nature observers.  Id.  Motorized vehicles are not permitted on the trail.  Id.  The Rock Creek Park Trail was not intended to provide fast and convenient transportation through the park, but to facilitate the visitors' experience of the park itself.  Id. at ¶ 8.  The portion of the trail on which Mr. Weinstein's accident occurred has exclusively recreational utility.  Id. at ¶ 7; see also Photographs of Weinstein Accident Location, attached hereto as Exhibit F.

NPS manages Rock Creek Park consistent with the Organic Act, 16 U.S.C. § 1, which states that NPS's purpose is "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment for the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  Id. at ¶ 3.  Neither Congress, NPS, nor Rock Creek Park has established formal standards for park officials to observe for the maintenance of park trails or the placement of warning signs.  Instead, NPS vests its superintendents and other decision-makers at the park level with discretion to address public safety concerns, including the maintenance of trails and whether to install warning signs.  Id. at ¶ 9.

In particular, NPS's Management Policies, 8.2.5.1 provides that "the means by which public safety concerns are to be met is left to the discretion of the superintendents and other decision makers at the park level who must work within the limits of funding and staffing."  See NPS Management Policies (2006) at 8.2.5.1 attached hereto as Exhibit D.  Accordingly, decisions about when and how to conduct maintenance of the Rock

Creek Park Trail and when and how to install warning signs on the trail fall within the park superintendent's discretion.

The condition of the Rock Creek Park Trail is regularly inspected and evaluated by NPS staff. Coleman Decl. at ¶ 10. Trail maintenance is performed only upon determination that maintenance is warranted. Id. at ¶ 11. In deciding whether to undertake maintenance of the recreational trail, NPS balances "the safety of park visitors, the aesthetics of the surrounding area, the potential for environmental impact or damage, the harmony of the park environment, and available funds." Id. The 25 miles of Rock Creek Park Trail naturally contain surface irregularities, holes and cracks. Rock Creek Park's superintendent believes that the regular repair of every surface irregularity, hole, or crack on the Rock Creek Park Trail would intrude significantly upon park visitors' ability to experience the natural beauty of the park, and would simultaneously cripple the park's budget, preventing allocation of funds to other projects needing attention including, but not limited to, recreational activities, other maintenance, and information dissemination in the form of brochures for visitor use. Id. at ¶ 12.

In deciding whether to place a warning sign in Rock Creek Park, park officials refer to the *National Park Service Sign Manual* as guidance, taking into account such matters as "engineering judgment, the aesthetics of the physical surroundings of the area question, natural and historic features [and], the park visitors' enjoyment and appreciation, and available funds." Coleman Decl. at ¶ 13. The Sign Manual, however, does not establish specific standards for warning signs, particularly in areas that do not feature vehicle traffic, and provides that "the individual park manager . . . has the responsibility for determining whether or not a sign is necessary or appropriate at a give location." Id. at ¶ 14; Sign Manual at p. 1-1. Rock Creek Park's superintendent believes

that the placement of numerous signs along the Rock Creek Park Trail warning of every possible hazard, would detract from the aesthetics of the park, negatively impact park visitors' experience, and present an unnecessary drain on the park's budget.  Coleman Decl. at ¶ 16.

## II. ARGUMENT

### A.    Standard of Review

#### 1.    FED. R. CIV. P. 12(b)(1).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. Natural Res. Def. Council v. Johnson, 422 F. Supp. 2d 105, 110 (D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)); Macharia v. United States, 334 F.3d 61, 67 (D.C. Cir. 2003).  When evaluating a Rule 12(b)(1) motion, the Court may treat defendant's jurisdictional argument as a "factual challenge" to jurisdiction.  See Macharia, 334 F.3d at 64, 67-68.  Accordingly, the plaintiff must demonstrate through affidavits or other testimony that the court has jurisdiction. Id. at 67; see also Mountain States Legal Found. v. Bush, 306 F.3d 1132, 1134 (D.C. Cir. 2002). The Court is free to consider material outside of the pleadings in its effort to determine whether the Court has jurisdiction in the case. Calloway v. Brownlee, 366 F. Supp. 2d 43, 49 (D.D.C. 2005).  But "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence."  Thompson v. Capitol Police Bd., 120 F. Supp. 2d 78, 81 (D.D.C. 2000).

#### 2.    FED. R. CIV. P. 56(c).

Under FED. R. CIV. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show

that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits or other competent evidence setting forth specific facts demonstrating that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor.  Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249.

**B.**    **FTCA and the Discretionary Function Exception**

1.    A Limited Waiver of Sovereign Immunity

Sovereign immunity bars all suits against the United States except in accordance with the explicit terms of statutory waiver of such immunity.  United States v. Nordic Village, Inc., 503 U.S. 30, 32-34, 37 (1990); United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976).  A waiver of sovereign immunity must be strictly construed in favor of the United States.  Ardestani v. INS, 502 U.S. 129, 137 (1991)(citations omitted); see also Dept. of the Army v. FLRA, 56 F.3d 273, 277 (D.C. Cir. 1995) ("the statutory waiver provision must unambiguously establish that it extends to the award of money damages"); Haase v. Sessions, 893 F.2d 370, 373 (D.C. Cir. 1990) ("waivers of sovereign immunity, the Supreme Court has repeatedly reminded us, must be narrowly construed")).  Absent full compliance with the conditions

6

placed upon waiver of that immunity, the Court lacks jurisdiction to entertain tort claims

against the United States. GAF Corp. v. United States, 818 F.2d 901, 904 and n.86 (D.C.

Cir. 1987); see also Simpkins v. District of Columbia Government, 108 F.3d 366, 371

(D.C. Cir. 1997); Jackson v. United States, 730 F.2d 808, 809 (D.C. Cir. 1984).

The Federal Tort Claims Act waives the government's sovereign immunity for

tort claims arising out of negligent conduct of government employees acting within the

scope of their employment. 28 U.S.C. § 1346(b)(1). The FTCA's waiver, however, is

limited by the discretionary function exception, which provides immunity from suit

> for any claim . . . based upon the exercise or performance or the failure
> to exercise or perform a discretionary function or duty on the part of a
> federal agency or an employee of the Government, whether or not the
> discretion involved be abused.

28 U.S.C. §2680(a).

The discretionary function exception "restores the government's immunity in

situations where its employees are carrying out governmental or 'regulatory' duties,"

Faber v. United States, 56 F.3d 1122, 1124 (9th Cir. 1995), and it "marks the boundary

between Congress' willingness to impose tort liability on the United States and the desire

to protect certain decision-making from judicial second-guessing." Berkovitz v. United

States, 486 U.S. 531, 536-37 (1988). Where applicable, the discretionary function

exception precludes the court's subject matter jurisdiction over the plaintiff's FTCA

claims. Id.

2.    The Gaubert-Berkovitz Test

The Supreme Court, in United States v. Gaubert, 499 U.S. 315 (1991) and

Berkovitz, supra, enunciated a two-part test for determining applicability of discretionary

function exception: First, is the conduct discretionary? And if so, is the discretion

policy-driven?

7

To be discretionary, the Court must determine "whether the challenged actions involve 'an element of judgment or choice.'" Gaubert, 499 U.S. at 322. "That inquiry looks to 'the nature of the conduct, rather than the status of the actor,' and the discretionary element is not met where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz, 486 U.S. at 536. In such cases, the government employee "has no rightful option but to adhere to the directive." Id.

But where an element of discretion exists, it must then be determined whether the judgment required of the government employee is the kind that the discretionary function exception is designed to shield, or namely, those "decisions grounded in social, economic, and political policy." Id. at 537. Decisions that require discretion are exempt from suit under the FTCA if they are "susceptible to policy judgment." Cope v. Scott, 45 F.3d 445, 448 (D.C. Cir. 1995).

The Supreme Court, however, has rejected lower courts' tendencies to cast discretionary function cases within "analytical frameworks" that avoid the proper analysis: Whether the *nature* of the decision involved involved the exercise of policy judgment. Id. at 449 (emphasis added). "What matters is not what the decisionmaker was thinking, but whether the type of decision being challenged is grounded in social, economic, or political policy." Id. And where the government employee's discretion is express or implied by a statue, it must be *presumed* that the employee's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory scheme." Id.

Finally, if the challenged discretionary conduct is of the nature and quality that Congress intended to protect, the discretionary function exception applies even if negligence is proved.  This principle is compelled by the language of the discretionary function exception, which applies regardless of "whether or not the discretion involved be abused."  28 U.S.C. §2680(a).  In other words, negligence "is irrelevant to the discretionary function issue."  Mitchell v. U.S., 787 F.2d 466, 468 (9th Cir. 1986); see also Golden Pacific Bancorp. v. Clarke, 837 F.2d 509, 511 (D.C. Cir. 1998).

C.    **NPS's Decisions Regarding Maintenance and Warning Signs On a Purely Recreational Portion of Rock Creek Park Trail Are Immune to Suit Under the Discretionary Function Exception**

NPS's authority to manage our national parks derives from the Organic Act, 16 U.S.C. § 1, which states that NPS's purpose is "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  NPS's mandate under the Organic Act provides that "the Park Service may balance aesthetic concerns with those of visitor safety in reaching planning decisions, and that safety concerns will not automatically eclipse all other policy considerations."  Shansky v. United States, 164 F.3d 688, 693 (1st Cir. 1999).

Along with NPS's broad discretion to manage national parks in a manner consistent with the preservation of the park's natural beauty, the NPS director has vested discretion with park superintendents to make public-safety related decisions.  NPS Management Policy 8.2.5.1 provides that the "means by which public safety concerns are to be met is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing."  Exhibit D.  Accordingly, it is beyond dispute that NPS decisions regarding the maintenance of a park nature trail or

the placement of signs on a park nature trail are left substantially to the discretion of park officials, thus satisfying the first prong of the Gaubert-Berkovitz test.  See Cope, supra., 45 F.3d at 450-51.

The second prong of the Gaubert-Berkovitz test requires that the discretion afforded to the federal employee be so grounded in public policy considerations that decisions made in exercise of that discretion should be immune from tort liability.  The D.C. Circuit explains that the exception applies "where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency."  Cope, 45 F.3d at 450.

The statutory scheme of the Organic Act "empowers the Park Service to balance incommensurable values such as safety and aesthetics, and the Judicial Branch is ill-equipped to rework that balance."  Id.  In other words, NPS decisions that require the discretion to balance safety and aesthetics are *presumed* immune under the discretionary function as interpreted by the Supreme Court in Gaubert.  See Kiehn v. United States, 984 F.2d 1100, 1105 (10th Cir. 1993)(NPS's park management decisions "inherently" require public policy consideration).

1.    Maintaining the Surface of Rock Creek Park Trail

Plaintiffs allege that surface irregularities, such as cracks and a hole, in the Rock Creek Park Trail caused his accident, and that NPS was negligent in failing to maintain the trail in a manner that eliminated such hazards.  It is critically important, however, that the site of Mr. Weinstein's accident was on a portion of Rock Creek Park Trail used *exclusively* for recreation and nature observing.  In other words, the accident occurred at a location where the primary or even *sole* purpose of the trail is for visitors to experience Rock Creek Park.

In making decisions about the maintenance the Rock Creek Park Trail, Park officials adhere to long standing NPS policy to intrude only minimally upon the natural setting. Coleman Decl. at ¶¶ 5, 11 – 12. And because Rock Creek Park faces everpresent funding and human resource limitations, the allocation and most effective use of the limited funds and personnel is always taken into consideration. Id. Rock Creek Park officials have determined that maintenance of the recreational trail should be scheduled and performed when found to be warranted. Id. at ¶ 11. In deciding whether to undertake maintenance of the recreational trail, NPS balances the safety of park visitors, the aesthetics of the surrounding area, the potential for environmental impact, the harmony of the park environment, and available funds. Id.

The 25 miles of trail in Rock Creek Park naturally contain surface irregularities, including minor holes and cracks. Were NPS to decide to undertake to repair every crack or hole in a trail in Rock Creek Park, it would present a constant intrusion upon the natural beauty of Rock Creek Park, and significantly reduce trail users' ability to enjoy the park, while simultaneously crippling the park's operating budget. Id. at ¶ 12. Maintaining the recreational trail in a manner that places primary concern for the safety of cyclists would require such intrusion into the natural beauty of the park that the park experience for other users—hikers, joggers, nature observers, and others—would be sacrificed. These are precisely the kinds of policy concerns identified by the D.C. Circuit in Cope as sufficient to immunize those decisions from tort liability.

In Cope, the D.C. Circuit addressed the application of the discretionary function exemption to the NPS's actions in Rock Creek Park. That case involved a motor vehicle accident on a portion of Beach Drive managed by NPS, and used as a motor vehicle thoroughfare. Upon the government's urging of the discretionary function exemption,

11

the D.C. Circuit found that NPS's discretion with regard to the maintenance of the skid resistance of Beach Drive in Rock Creek Park was sufficiently grounded in policy considerations to preclude tort liability. "Determining the appropriate course of action," the court stated, "would require balancing factors such as Beach Drive's overall purpose, the allocation of funds among significant project demands, the safety of drivers and other park visitors, and the inconvenience of repairs compared to the risk of safety hazards." 345 F.3d at 450. The court held that such decisions require the agency to establish priorities for the accomplishment of its policy objectives, and those decisions should not be subject to judicial "second-guessing." Id. As a result, the court dismissed the plaintiff's claim for negligent maintenance as a matter of law.

Other Circuits have likewise held that when maintenance decisions are based on a weighing of policy considerations, those decisions fall under the protection of the discretionary function exception of the FTCA. In a recent decision, the Third Circuit found that NPS's decision regarding when and how hazardous trees should be identified and removed was a discretionary function that immunized the government from suit after a tree fell on the plaintiffs' car, because tree maintenance was not the subject of a specific legislative or regulatory mandate, and because NPS's decision was of the kind that took into account the extent to which the natural forest should be preserved and the limited financial and human recourses available. Merando v. United States, 517 F.3d 160 (3d Cir. 2008).

In Childers, supra., the Ninth Circuit ruled that NPS's decision to leave a trail unmaintained in winter was the result of policy-based considerations and thus immune to suit under the FTCA. In Lopez v. United States, 376 F.3d 1055, 1059-60 (10th Cir. 2004), the Tenth Circuit held that the United States Post Office's decisions regarding the

12

maintenance of mailboxes were grounded in policy considerations and protected as discretionary functions.  Likewise, in <u>Smith v. Washington Metro Transit Auth.</u>, 290 F.3d 201 (4th Cir. 2002), the government's decisions about the time and manner in which it repaired escalators were, in the absence of specific regulatory mandates, entitled to immunity under the discretionary function exception because the decisions were of the kind grounded in policy concerns.

The evidence before the Court here demonstrates that Rock Creek Park Officials must weigh substantial policy concerns with regard to the maintenance of the recreational portion of the Rock Creek Park Trail.  Along with everpresent human and financial resource considerations, this case does not involve a parking lot or a road, where the park visitor's experience may not be the primary concern.  This case, instead, involves a portion of the trail where NPS values the visitor's ability to experience the park over the need to repair every hole, crack, or surface irregularity.  Such a maintenance undertaking would unquestionably present a substantial intrusion upon the natural environment of Rock Creek Park.  With these considerations evident, it is clear that NPS's decisions regarding when to maintain Rock Creek Park Trail fall squarely within the protection of the discretionary function exception of the FTCA.  Accordingly, the defendant respectfully submits that the Court should dismiss plaintiffs' claims based on the alleged failure to inspect, maintain, or repair the Rock Creek Park Trail.

2.      Placement of Warning Signs on Rock Creek Park Trail

NPS's decisions regarding the placement of warning signs along the portion of Rock Creek Park Trail devoted exclusively to recreation are similarly protected by the discretionary function exception. The placement and use of signs in Rock Creek Park is governed by NPS policy outlined in the 1988 *National Park Service Sign Manual*.  The

Sign Manual sets forth factors for individual park managers to consider regarding the placement of signs, but grants discretion to the managers to determine "whether or not a sign is necessary or appropriate at a given location."  Exhibit E at p. 1-1.  But the Sign Manual instructs park officials to "bear in mind long standing NPS policy to minimally intrude upon the natural or historic setting in National Park System areas, and to avoid an unnecessary proliferation of signs, while striving to ensure the safety of park visitors." Id.

The Sign Manual does not explicitly require the posting of signs in certain situations, nor does it determine the exact locations or the manner in which to determine the placement of signs.  Rather, the manual expressly leaves the placement of signs to the discretion of park officials.  At Rock Creek Park, the superintendent has determined that the placement of numerous signs on the park's recreational trail would impinge on the natural beauty of the area and would negatively impact park visitors' aesthetic experience.  Coleman Decl. at ¶ 13, 16.  The superintendent has also determined that the placement of a sign warning of every surface irregularity, crack, or hole along the 25 miles of the Rock Creek Park Trail would violate NPS policies of minimal intrusion upon the natural setting and against the unnecessary proliferation of signs.  Id.  And finally, as with constant trail maintenance, the placement of warning signs to mark surface irregularities, holes, and cracks along the Rock Creek Park Trail would significantly impact the park's budget and ability to fund other park programs.  Id.

Numerous courts have addressed the applicability of the discretionary function exception to the placement of signs in national parks and have found it appropriately applied.  See Rosebush v. United States, 119 F.3d 438, 443 (6th Cir. 1997)(failure to post sign warning of possible campfires protected); Kiehn, supra. 984 F.2d at 1103-06 (failure

14

to post sign warning climber of unstable sandstone protected); <u>Chantal v. United States</u>, 104 F.3d 207 (8th Cir. 1997)(failure to post sign warning of shallow steps protected); <u>Valdez v. United States</u>, 56 F.3d 1177 (9th Cir. 1995)(failure to post sign warning of water fall protected); <u>Soldano v. United States</u>, 453 F.3d 1140 (9th Cir. 2006)(failure to post sign warning of blind turn in road protected).  Likewise, in <u>Bowman v. United States</u>, the Fourth Circuit held that the placement of warning signs is subject to the discretionary function exception.  In so holding, the court stated that "National Park Service officials have more than safety in mind in determining the design and use of man-made objects such as guardrails and signs . . . . These decisions require balancing many factors: safety, aesthetics, environmental impact and available financial resources." 820 F.2d at 1395.

While the D.C. Circuit in <u>Cope</u> found that NPS's decisions regarding when and where to post signs along a vehicle traffic road in Rock Creek Park were not subject to the protection of the discretionary function exception, the court expressly noted the distinction between a commuter road and a trail intended for users to experience a national park.  "We agree that in certain circumstances, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excessive signs," the court stated.  "But this is not one of those circumstances . . . [because] the Park Service has chosen to manage the road in a manner more amenable to commuting through nature rather than communing with it."  45 F.3d at 452.

In <u>Hayes v. United States</u>, 539 F. Supp. 2d. 393 (D.D.C. 2008), this Court recognized the distinction identified by the D.C. Circuit in <u>Cope</u> when it found that the discretionary function did not insulate the government from liability for the decision not

to place a warning sign on a portion of Rock Creek Park Trail that converged with Beach Drive to allow access to the National Zoo.[1]  "As in Cope v. Scott," the Court stated, "the stretch of land involved here is not managed to facilitate the nature experience of park visitors."  539 F. Supp. 2d. at 403.  Therefore, because the primary function of the portion of the trail in question was not to facilitate the park visitor's aesthetic experience of the park itself, the Court concluded that, while decisions about whether to place warning signs are clearly discretionary, such decisions are not the kind grounded in the kinds of policy considerations that should be free from judicial second-guessing.

In the instant matter, it is clear that the distinction noted by the D.C. Circuit in Cope and this Court in Hayes must apply because the portion of the Rock Creek Park Trail at issue is used *exclusively* as a means by which visitors enjoy the aesthetics of the park itself.  It does not support vehicle traffic, or serve to facilitate access to another institution or part of the park.  Because NPS does not manage the portion of Rock Creek Park Trail at issue for anything other than a means for park visitors to experience the beauty of the park, park officials' decision to not post signs warning trail users of every crack, hole, or surface irregularity is grounded in the fundamental policy consideration upon which NPS's discretion is based—the preservation of the park's natural environment from intrusion—along with concerns regarding the allocation of financial and human resources.  If NPS's election not to place a sign warning Mr. Weinstein of the hole, crack, or surface irregularity along the recreational multi-use trial does *not* qualify for the discretionary function exception to the FTCA, it is difficult to imagine any

---

[1]  The portion of the trail in question in Hayes was located near an entrance to the National Zoo where the trail and Beach Drive converge, with no barriers between them. 539 F. Supp. 2d at 403.  The Court noted that the portion of the trail in question "is so close to Beach Drive in some areas that conflicts, including traffic accidents, are 'commonplace between vehicles, bicyclists and pedestrians.'"  Id.

16

national park sign situation that would qualify.  Instead, the instant matter presents precisely the situation identified in Cope and Hayes where NPS's decisions are and should be protected by the discretionary function exception of the FTCA.  The defendant thus respectfully requests that the Court dismiss plaintiffs' claim for the alleged failure to post warning signs along the Rock Creek Park Trail.

## IV.    CONCLUSION

The United States' waiver of sovereign immunity under the FTCA is limited by the discretionary function exception.  When a government employee is vested with discretion to make decisions, and those decisions require the weighing of significant policy considerations, the discretionary function exception to the FTCA shields those decisions from tort liability.  In Gaubert and Berkovitz, the Supreme Court instructs that courts are to consider whether the decisions in question are the *kind* of decision that must weigh relevant policy considerations, and when such discretion is vested, either expressly or impliedly, by a statue or regulation, discretionary function immunity is *presumed*.

NPS's legislative mandate and management policies vest great discretion with park officials to make public safety decisions.  Under this guidance, when the park visitor's experience of the park itself is at issue, absolute safety is *not* the most important consideration.  Instead, park officials must weigh considerations of aesthetics and funding, along with NPS's core principle to minimally intrude upon the natural beauty of its lands when they make public safety decisions.  Unlike in Cope and Hayes, the recreational portion of Rock Creek Park Trail upon which Mr. Weinstein's accident occurred is not a motor vehicle road or vein of transportation.  Rather, that portion of trail is intended exclusively to provide park users—hikers, joggers, nature observers, cyclists, and others— opportunity to experience the natural beauty of the park itself.  In an

exercise of discretion, Rock Creek Park officials have determined that constant trail maintenance and placing signs warning of every possible trail hazard constitute an undesirable intrusion upon the park's beauty and park visitors' experience, and would unduly drain the park's limited financial and human resources.  While Mr. Weinstein's accident is clearly unfortunate, NPS's discretion in this case is protected by the discretionary function exception to the FTCA.

Accordingly, the United States respectfully requests that the Court dismiss plaintiffs' case for lack of subject matter jurisdiction.  In the alternative, the defendant requests that summary judgment be entered in favor of the defendant because there is no genuine dispute as to the material facts of this matter and the defendant is entitled to judgment as a matter of law.

Respectfully  submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., Room E - 4106
Washington, D.C. 20530
(202) 514-7224

Of Counsel:
Charles B. Wallace, Esq.
U.S. Department of the Interior
Office of the Solicitor

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL AND BETH | ) | |
| WEINSTEIN | ) | |
|       Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 08- 00216 (RJL) |
| | ) | |
| UNITED STATES | ) | |
| | ) | |
|       Defendant. | ) | |
| _____ | ) | |

**STATEMENT OF MATERIAL FACTS**
**TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), the United States hereby submits, in support of its Motion for Summary Judgment, this following statement of material facts to which there is no genuine dispute.

1. On April 16, 2005, plaintiff, Michael Weinstein sustained injuries resulting from a fall from his bicycle while riding on the Rock Creek Park Trail in the general vicinity of Beach Drive and Klingle Road.   See Plaintiffs' Complaint at p.3, ¶ 7.

2. Rock Creek Park is a national park owned by the United States and managed by the National Park Service, a bureau of the Department of the Interior.  See Plaintiffs' Complaint at p. 2, ¶ 4.

3. On March 28, 2007, plaintiffs filed a Standard Form 95 administrative claim with the Department of the Interior for injuries allegedly sustained by Mr. Weinstein on April 16, 2005, and for Mrs. Weinstein's claim of loss of consortium.  See Plaintiffs' SF-95 Administrative Claim, attached hereto as Exhibit A.

4.  On September 28, 2007, the Department of the Interior denied plaintiffs' administrative claim, finding no credible evidence to establish any negligent or wrongful act or omission on the part of the Government.  See DOI Communication of Denial, attached hereto as Exhibit B.

5.  Rock Creek Park proper contains more than 1,700 acres and 25 miles of multi-purpose trail.  See Declaration of Adrienne Coleman, Superintendent of Rock Creek National Park, attached hereto as Exhibit C, at ¶ 2.

6.  The Rock Creek Park Trail was designed and is managed consistent with the purpose of NPS under the Organic Act, which is to "conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  16 U.S.C. § 1; Coleman Decl. at ¶ 3.

7.  The Rock Creek Park Trail is a multi-use trail, meaning that it was designed and is intended for the use of all park visitors, not just bicyclists.  Motor vehicles of any kind, including motorcycles and motorscooters, are not permitted on the trail.  Coleman Decl. at ¶ 6.

8.  The Rock Creek Park Trail is used by hikers, joggers, nature observers and bicyclists.  Coleman Decl. at ¶ 7.

9.  The potion of Rock Creek Park Trail on which Mr. Weinstein's accident occurred is purely recreational and intended to facilitate visitors' experience of the park itself.  It is intended to provide fast and convenient transportation through the

park.  Coleman Decl. at ¶ 8; <u>see also</u> Photographs of Weinstein Accident Location, attached hereto as Exhibit F.

10. NPS and Rock Creek Park have no evidence of any other alleged accidents at the site of Mr. Weinstein's alleged fall.  Coleman Decl. at ¶ 10.

11. Neither Congress, NPS nor Rock Creek Park has established formal standards for park officials to adhere for the maintenance of park trails or the placement of warning signs, leaving such public safety decisions for the determination of park officials made in consideration of policy concerns and NPS's guiding principles. <u>See</u> NPS Management Policies, 8.2.5.1, attached hereto as Exhibit D; <u>see also</u> Coleman Decl. at ¶¶ 9 – 16.

Respectfully  submitted,

     /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

     /s/
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

     /s/
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., Room E - 4106
Washington, D.C. 20530
(202) 514-7224

Of Counsel:
Charles B. Wallace, Esq.
U.S. Department of the Interior
Office of the Solicitor

3

Exhibit A

Standard Form 95

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>United States Department of Interior<br>National Park Service<br>1100 Ohio Dr., S.W.<br>Washington D.C. 20242 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br>Michael Weinstein   and Beth Weinstein<br>10729 Lady Slipper Terrace   wife of Michael<br>Rockville, MD 20852   Weinstein |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>9/20/1932 | 5. MARITAL STATUS<br>M | 6. DATE AND DAY OF ACCIDENT<br>4/16/05 | 7. TIME (A.M. OR P.M.)<br>16:30 p.m. |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)
Claimant was riding his bicycle along Beach Drive at Klingle Rd., N.W., Washington D.C. Mr. Weinstein's bicycle hit a pothole on the path causing him to loose control, pitching him over the handlebars and striking his head and face onto to the paved pathway. An inspection of the path revealed it to be dry and clear of debris, however, a      series of potholes caused Mr. Weinstein to fall. See incident report attached.

**RECEIVED**

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

The bicycle cannot be found by the United States. Claimants bicycle was damaged due to the incident.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
As a consequence of this accident, Michael Weinstein is now a C4-C5 paraplegic He suffered from a severe neck and head injury. Please see attached medical records and bills.

-Claim for personal injury,permanent impairment, loss of consortium on behalf of Beth Weinstein,wife of Michael Weinstein

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Barbara Gardazi | 1801 Calvert Rd., N.W.<br>Washington D.C. 20009 | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>$500 | 12b. PERSONAL INJURY<br>$12,000,000 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$12,000,500 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)  see attached power of<br>Weinstein<br>emotion P.O.A | 13b. Phone number of person signing form  attorney papers<br>240-388-2501 | 14. DATE OF SIGNATURE<br>2/1/07 |
|---|---|---|
| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109

NSN 7540-00-634-4046

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

### INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☒ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No

Silver Spring Branch Office
Erie Insurance Group
P. O. Box 4409

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐Yes  ☐No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

Centers for Medicare & Medicaid Services,
7500 Security Boulevard, Baltimore MD 21244-1850

19. Do you carry public liability and property damage insurance?  ■ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

Silver Spring Branch Office
Erie Insurance Group
P. O. Box 4409

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all Items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95    BACK

Exhibit B

Denial Letter

# United States Department of the Interior

OFFICE OF THE SOLICITOR
1849 C STREET N.W.
WASHINGTON, DC 20240

September 26, 2007

FILE COPY
SURNAME
9.28-07
PSL

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

William P. Lightfoot
Koonz, McKenney, Johnson, DePaolis, & Lightfoot, LLP
James Monroe Building
2001 Pennsylvania Avenue, N.W. Suite 450
Washington, D.C. 20006

Re:    Administrative Federal Tort Claim of Michael Weinstein

Dear Mr. Lee:

This letter is in response to the federal tort claim you submitted on behalf of your client, Michael Weinstein, for $500.00 in property damage and $12,000,000.00 in personal injury stemming from injury your client allegedly sustained while biking on the Rock Creek Park Trail on April 16, 2005.  Your client's claim, dated February 1, 2007, was received by the National Park Service on or about March 28, 2007. We properly considered your claim under Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 et.seq.

With certain limitations and exclusions, the FTCA provides that a claimant may file an administrative claim for money damages against the United States "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. §§1346(b), 2672.

According to the Standard Form 95, "Claim for Damage, Injury or Death," you submitted to document your client's claim, the sequence of events leading up to this claim for property damage and personal injury is as follows:

> Claimant was riding his bicycle along Beach Drive at Klingle Rd., N.W., Washington D.C.  Mr. Weinstein's bicycle hit a pothole on the path causing him to lose control, pitching him over the handlebars and striking his head and face onto the paved pathway. An inspection of the path revealed it to be dry and clear of debris, however, a series of potholes caused Mr. Weinstein to fall.  See incident report attached.

1

After reviewing the complete administrative record in this matter, including all documentation you submitted, we find no credible evidence to establish any negligent or wrongful act or omission on the part of the Government in this matter. Accordingly, as there is no basis in law or fact to support your allegations, your client's claim is hereby denied.

If you are dissatisfied with this determination, you may submit a written request for reconsideration based on newly discovered evidence not reasonably discoverable at the time of presenting this claim, or may file suit in an appropriate United States District Court no later than six months after the date of mailing this notification.

Sincerely,

Alton E. Woods
Assistant Solicitor
Branch of Acquisitions and
    Intellectual Property
Division of General Law

Cc:    Peter Gentile
       Claims Specialist, National Capital Region
       National Park Service

2

Exhibit C

Declaration of Adrienne Coleman

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL AND BETH )
    WEINSTEIN )
        Plaintiffs, )
         )
    v. )        **Civil No. 1:08-CV-00216**
         )
UNITED STATES OF AMERICA )
         )
        Defendant. )
        _____ )

## DECLARATION OF ADRIENNE COLEMAN

I, Adrienne Coleman, make this declaration in lieu of an affidavit pursuant to 28
U.S.C. § 1746. I am aware that this declaration may be filed in the United States District
Court for the District of Columbia, and that it is the legal equivalent of a statement under
oath.

1. I am the Superintendent of Rock Creek Park, National Park Service ("NPS"), U.S.
   Department of the Interior, 3545 Williamsburg Lane N.W., Washington, DC 20008. I
   have been so employed since May 1997. I have been employed by NPS since 1980.

2. Rock Creek Park proper contains approximately 1,745 acres.

3. The Rock Creek Park Trail was designed and is managed consistent with the purpose
   of NPS under the Organic Act, which is to "conserve the scenery and the natural and
   historic objects and the wild life therein and to provide for the enjoyment of the same
   in such manner and by such means as will leave them unimpaired for the enjoyment
   of future generations." 16 U.S.C. § 1.

4. The Rock Creek Park Trail spans approximately 25 miles in Rock Creek Park.

5.  With regard to the design and maintenance of trails, it is the policy of NPS to adhere to its Organic Act mandate, and to intrude only minimally upon the natural or historic setting and to avoid proliferation of signs while providing for the safety of park visitors.

6.  The Rock Creek Park Trail is a multi-use trail, meaning it was designed and is intended for the use of all park visitors, not just bicyclists. Motor vehicles or any kind, including motorcycles and motorscooters, are not permitted on the trail.

7.  The portion of the Rock Creek Park Trail where Mr. Weinstein's accident occurred is used by hikers, joggers, nature observers and bicyclists.

8.  The Rock Creek Park Trail was not intended to provide fast and convenient transportation through the park, but to facilitate the visitors' experience of the park itself.

9.  NPS vests decision-making authority in park superintendents, which includes public safety related decisions. NPS Management Policy 8.2.5.1 provides that "the means by which public safety concerns are to be met is left to the discretion of the superintendents and other decision makers at the park level." *See* NPS Management Policies (2006) at 8.2.5.1. Decisions about when and how to conduct maintenance of the Rock Creek Park Trail and when and how to install warning signs on the trail fall within this discretion.

10. The condition of the Rock Creek Park Trail is regularly inspected and evaluated by members of my staff. A review of the records indicates that no other accidents have been reported at the portion of the trail at which plaintiffs claim Mr. Weinstein was injured.

11. Maintenance of the Rock Creek Park Trail is scheduled and performed upon a determination that maintenance is warranted. In deciding whether to undertake maintenance of the trail, I balance the safety of park visitors, the aesthetics of the surrounding area, the potential for environmental impact or damage, the harmony of the park environment, and available funds.

12. In my discretion as Superintendent, I believe that the regular repair of every surface irregularity, hole, or crack on the Rock Creek Park Trail would intrude significantly upon park visitors' ability to experience the natural beauty of the park, and would simultaneously cripple the park's budget, preventing allocation of funds to other projects needing attention including, but not limited to, recreational activities, other maintenance, and information dissemination in the form of brochures for visitor use.

13. In deciding whether to place a warning sign on the Rock Creek Park Trail, I refer to the *National Park Service Sign Manual* for guidance and take into account engineering judgment, the aesthetics of the surroundings, natural and historic features, the ability of park visitors to enjoy and appreciate the park, and funds available. *See National Park Service Sign Manual* at p. 1-1.

14. The Sign Manual does not mandate specific instances where signs are required, but rather vests with park officials the discretion to determine when signs are needed, and their content, but reminds officials to "bear in mind long standing NPS policy to minimally intrude upon the natural or historic setting in National Park System areas, and to avoid an unnecessary proliferation of signs, while striving to ensure the safety of park visitors." *See National Park Service Sign Manual* at p. 1-1.

15. NPS policy also recognizes that park visitors assume a substantial degree of risk and responsibility for their own safety when visiting the park's recreational environments. *See* NPS Management Policies, at Ch. 8.2.5.1.

16. I believe that the placement of numerous signs along the Rock Creek Park Trail warning of every possible hazard, would detract from the aesthetics of the park, negatively impact park visitors' experience, and present an unnecessary drain on the park's budget.

I declare under penalty of perjury that the foregoing is true and correct based upon my knowledge, information and belief, and based upon information provided by employees of the United States Department of the Interior and records maintained by that agency.

Dated this 7th day of May, 2008.

Adrienne Coleman
Superintendent
Rock Creek Park
National Park Service
U.S. Department of the Interior
3545 Williamsburg Lane N.W.
Washington, DC 20008

# Exhibit D

# Management Policies

# Management Policies 2006



NATIONAL
PARK
SERVICE

# Use of the Parks



8

*National parks belong to all Americans, and the National Park Service will welcome all Americans to experience their parks. The Service will focus special attention on visitor enjoyment of the parks while recognizing that the NPS mission is to conserve unimpaired each park's natural and cultural resources and values for the enjoyment, education, and inspiration of present and future generations. The Service will also welcome international visitors, in keeping with its commitment to extend the benefits of natural and cultural resource conservation and outdoor recreation throughout the world.*

Many different types of uses take place in the hundreds of park units that make up the national park system. The Service must ensure that these uses are appropriate to the park in which they occur.

(42 USC 12207), which relates specifically to the operation and management of federal wilderness areas. Specific guidance for implementing these laws is found in the Secretary of the Interior's regulations regarding enforcement of nondiscrimination on the basis of disability in Department of the Interior programs (43 CFR Part 17, Subpart E), and General Service Administration regulations adopting accessibility standards for the Architectural Barriers Act (41 CFR Part 102-76, Subpart C).

One primary tenet of accessibility is that, to the highest degree reasonable, people with disabilities should be able to participate in the same programs and activities available to everyone else. In choosing among methods for providing accessibility, higher priority will be given to those methods that offer programs and activities in the most integrated setting appropriate. Special, separate, or alternative facilities, programs, or services will be provided only when existing ones cannot reasonably be made accessible. The determination of what is reasonable will be made only after careful consultation with persons with disabilities or their representatives. Any decision that would result in less than equal opportunity is subject to the filing of an official disability rights complaint under the departmental regulations cited above.

*(See Accessibility for Persons with Disabilities 1.9.4; Physical Access for Persons with Disabilities 5.3.2; Accessibility for Persons with Disabilities 6.4.10; Accessibility for Persons with Disabilities 9.1.2. Also see Director's Order #16A: Reasonable Accommodation for Applicants and Employees with Disabilities; Director's Order #42: Accessibility for Visitors with Disabilities in National Park Service Programs and Services; Americans with Disabilities Act and Architectural Barriers Act Accessibility Standards)*

### 8.2.5    Visitor Safety and Emergency Response
### 8.2.5.1    Visitor Safety
The saving of human life will take precedence over all other management actions as the Park Service strives to protect human life and provide for injury-free visits. The Service will do this within the constraints of the 1916 Organic Act. The primary—and very substantial—constraint imposed by the Organic Act is that discretionary management activities may be undertaken only to the extent that they will not impair park resources and values.

While recognizing that there are limitations on its capability to totally eliminate all hazards, the Service and its concessioners, contractors, and cooperators will seek to provide a safe and healthful environment for visitors and employees. The Service will work cooperatively with other federal, tribal, state, and local agencies; organizations; and individuals to carry out this responsibility. The Service will strive to identify and prevent injuries from recognizable threats to the safety and health of persons and to the protection of property by applying nationally accepted codes, standards, engineering principles, and the guidance contained in Director's Orders #50B, #50C, #58, and #83 and their associated reference manuals. When practicable and consistent with congressionally designated purposes

and mandates, the Service will reduce or remove known hazards and apply other appropriate measures, including closures, guarding, signing, or other forms of education. In doing so, the Service's preferred actions will be those that have the least impact on park resources and values.

The Service recognizes that the park resources it protects are not only visitor attractions, but that they may also be potentially hazardous. In addition, the recreational activities of some visitors may be of especially high-risk, high-adventure types, which pose a significant personal risk to participants and which the Service cannot totally control. Park visitors must assume a substantial degree of risk and responsibility for their own safety when visiting areas that are managed and maintained as natural, cultural, or recreational environments.

These management policies do not impose park-specific visitor safety prescriptions. The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing. Examples include decisions about whether to install warning signs or artificial lighting, distribute weather warnings or advisories, initiate search-and-rescue operations or render emergency aid, eliminate potentially dangerous animals, close roads and trails or install guardrails and fences, and grant or deny backcountry or climbing permits. Some forms of visitor safeguards typically found in other public venues—such as fences, railings, and paved walking surfaces—may not be appropriate or practicable in a national park setting.

*(See Air Quality 4.7.1; Lightscape Management 4.10; General Policy 6.4.1; Siting Facilities to Avoid Natural Hazards 9.1.1.5; Waste Management and Contaminant Issues 9.1.6; Risk Management Program 10.2.4.8; Food Service Sanitation Inspections 10.2.4.14)*

### 8.2.5.2    Emergency Preparedness and Emergency Operations
The National Park Service will develop a program of emergency preparedness in accordance with title VI of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 USC 5195-5197g); National Security Decision Directive 259 (February 4, 1987); Department of the Interior policy; and other considerations at the Washington headquarters, regional, and park levels. The program will (1) provide guidance for incident management at the park level and management and relief for emergency incidents and events beyond park capabilities; (2) ensure the agency complies with the Presidential Homeland Security Directives, the National Emergency Response Plan, and the National Incident Management System standards; and (3) support interagency and national response to major incidents. The purpose of the program will be to provide for visitor and employee safety and the protection of resources and property to the extent possible. This program will include a systematic method for alerting visitors about potential disasters and evacuation procedures.

Exhibit E

National Park Service Sign Manual

D-871 C
File
NPS General



NATIONAL
PARK
SERVICE

Department
of the Interior

SIGN MANUAL

PLEASE RETURN TO:
TECHNICAL INFORMATION CENTER
DENVER SERVICE CENTER
NATIONAL PARK SERVICE

JANUARY 1988

SCANNED
9/29/00

ON MICROFILM

# CHAPTER 1: PURPOSE AND APPLICABILITY

## PURPOSE

This Sign Manual replaces the October 1978 edition of the National Park Service Sign System Specifications (NPS-SSS). It is designed for use by Park managers as an aid to the implementation of the National Park Service Traffic Control Sign System Guideline (NPS-52) and in arriving at management decisions regarding other park signing needs. It is intended that Park managers will utilize this Manual as a guide in the designing and ordering of all vehicular and pedestrian traffic control signing and other pertinent devices.

This Manual constitutes the official National Park Service supplement to the Manual on Uniform Traffic Control Devices (MUTCD) published by the Federal Highway Administration, U.S. Department of Transportation. Together, the MUTCD and this Manual are utilized by the National Park Service to provide for park managers recommended standards, specifications and procedures for the NPS Sign System to assure a uniform and distinctive system of signing and graphics in meeting the Service's obligations under Public Law 89-564, the Highway Safety Act of 1966, and the Highway Safety Program Standards 23 USC 402, in a manner consistent with National Park Service missions.

## APPLICABILITY

Long established and documented National Park Service policy [**Park Road Standards** (1968 and 1984)]holds that park roads have a unique purpose, which differs significantly from the purpose of roads on the Federal and state highway systems. The **Park Road Standards** contain the following admonishment to park visitors:

> Park roads are for leisurely driving only. If you are
> in a hurry, you might do well to take another route now,
> and come back when you have more time.

Signing on all park roads should be consistent with National Park Service policy that park roads are not intended to provide fast and convenient transportation, nor designed or intended to serve as commuter routes or connecting links to the Federal and state highway systems. Rather, they are intended to enhance the park experience while providing safe and efficient accommodation of park visitors.

In this regard, the MUTCD in conjunction with this NPS Sign Manual, should be utilized by Superintendents as guidance in making management decisions on the design, location, and application of road signs and markings on park roads; and it is the policy of the National Park Service to follow the MUTCD with respect to the format of all regulatory signs installed on NPS roads open to public vehicular traffic.

Nevertheless, the individual park manager, following the guidelines and procedures set down in NPS-52, has the responsibility for determining whether or not a sign is necessary or appropriate at a given location. The decision to utilize a particular sign at a particular location requires the professional judgment of the park manager--drawing upon available guides, resources, and traffic safety engineering expertise--and considering a variety of other factors, such as the appearance of the road as a whole and its relationship to the natural and/or historical environment through which it passes.

It is important in this regard, too, that such decisions bear in mind long standing NPS policy to minimally intrude upon the natural or historic setting in National Park System areas, and to avoid an unnecessary proliferation of signs, while striving to ensure for the safety of park visitors.

Through an agreement with the Federal Highway Administration, the National Park Service has developed several specific exceptions to specific sections of the MUTCD, as follows:

### Section 2A-27 Posts and Mountings

Add: Timber sign supports: A soil mounted timber sign support is acceptable as a breakaway support if it has a uniform cross section of not more than 24 square inches, or if within an 8-foot width path, there are:

Two posts, each no larger than 3'' x 6'' or 4'' x 5'' dimension stock, or round posts no larger than 5'' diameter, or 15¾'' circumference.

Three posts, each no larger than 3'' x 5'' or 4'' x 4'' dimension stock, or round posts no larger than 4½'' diameter or 14'' circumference.

### Section 2D-3 Color, Reflectorization, and Illumination

Add: Brown shall be the background color for all guide signs on National Park Service roads except for detour markers, detour signs, arrows, route markers, markers, or assemblies indicating a junction or intersection with an interstate highway.

### Section 2D-5 Lettering Style

Add: Modified Clarendon lettering shall be used on all National Park Service guide and informational signs.

Example of letter style is shown in Appendix A.

### Section 2D-6 Size of Lettering

Add: The size of lettering required for guide signs is directly a function of design speed. Die-cut letter fonts for the Modified Clarendon style are available in 3.75'', 6'', 9'', and 12'' capital heights. Corresponding lowercase sizes are two-thirds the capital height. Minimum standards for use of these letters are shown in Chapter 5 of this Manual.

### Section 2D-7 Amount of Legend

Detailed guidelines for determining sign size and text are found in Chapter 5 of this Manual.

# Exhibit F

# Photographs









**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL AND BETH** | ) | |
| **WEINSTEIN** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08- 00216 (RJL)** |
| | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

UPON CONSIDERATION of Defendant's Motion to Dismiss or in the

Alternative, For Summary Judgment, any Opposition thereto, and the entire record herein,

it is on this _____ day of _____, 2008,

ORDERED, that the said motion should be and hereby is granted, and it is

FURTHER ORDERED that this matter is dismissed

OR, in the alternative, that summary judgment is entered in favor of the defendant.

_____
UNITED STATES DISTRICT JUDGE